UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
John Donlon,

               Plaintiff,               10-CV-6577

      v.                               **DECISION**
                                            **and ORDER**
Michael J. Astrue,
Commissioner of Social Security

               Defendant.
_____

## Introduction

Plaintiff John Donlon ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff's claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act").

Plaintiff moves for judgment on the pleadings pursuant to Federal Rules of Civil Procedure Rule 12(c) ("Rule 12(c)") on the grounds that the decision of the Administrative Law Judge, Thomas P. Tielens ("ALJ"), was not supported by substantial evidence in the record. The Commissioner also moves for judgment on the pleadings pursuant to Rule 12(c) arguing that the ALJ's decision was based on substantial evidence in the record.

For the reasons set forth herein, I find that the decision of the Commissioner is supported by substantial evidence in the record. Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's Complaint is dismissed with prejudice.

**Background**

On February 13, 2007, Plaintiff filed an application for DIB alleging a disability onset date of June 17, 2006 due to posttraumatic stress disorder and joint pain in his legs. (Tr. at 106, 111).[1] The Commissioner initially denied Plaintiff's application. (Tr. at 57-61). Thereafter, Plaintiff filed a written request for a hearing before an ALJ, which was scheduled for August 18, 2009, but postponed to allow Plaintiff an opportunity to retain counsel. (Tr. at 49-56). Plaintiff, still proceeding *pro se*, attended a second hearing with an ALJ on December 14, 2009. (Tr. at 27-48).

In a decision dated January 28, 2010, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act on or before December 31, 2006, the date Plaintiff was last insured. (Tr. at 8-23). The Appeals Council denied Plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. (Tr. at 1-4). On October 12, 2010, Plaintiff filed this action.

**Discussion**

**1. Jurisdiction and Scope of Review**

42 U.S.C. § 405(g) grants jurisdiction to district courts to review claims based on the denial of Social Security benefits. Matthews v. Eldridge, 424 U.S. 319, 320, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  The section directs the district court to accept the

---

[1] "Tr." refers to the administrative transcript.

2

findings of fact made by the Commissioner, provided that such findings are supported by substantial evidence in the record.

Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison Co. v. NLRB, 305 U.S. 197, 217 (1938). Section 405(g) therefore limits this Court's review to two inquiries: (i) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003).

The Commissioner moves for judgment on the pleadings pursuant to Rule 12(c). Section 405(g) states that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g) (2009). Judgment on the pleadings may be granted under Rule 12(c) where the material facts are not in dispute and where judgment on the merits is possible given the contents of the pleadings. Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). If, after reviewing the record, the Court is convinced that Plaintiff has not set forth a plausible claim for relief, judgment on the pleadings may be appropriate. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

After reviewing the entire record, this Court finds that the ALJ's decision is supported by substantial evidence and is in accordance with the applicable legal standards. Therefore, the Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion is denied.

**II. Standard for Entitlement to Benefits**

A disability, under the Act, is defined as the "inability to engage in substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 1382c (a)(3)(A) (concerning SSI payments). Someone is considered "under a disability" if his impairment is so severe that he is both unable to do his previous work and unable to engage in any other kind of substantial gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B).

"Substantial gainful work" is "work that exists in significant numbers either in the region where the individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A) and 1382c (a)(3)(B). Work can be considered "substantial" even if it is done on a part-time basis, if less money is earned, or if workplace responsibilities are decreased from previous employment. 20 C.F.R. §§ 404.1572(a) and 416.972(a). Work can be considered "gainful" if it is the kind of work that is usually done for profit. 20 C.F.R. §§ 404.1572(b) and 416.972(b).

In determining whether or not an individual is disabled, the Social Security Administration requires the ALJ to engage in the following five-step evaluation:

> (1) if the claimant is performing substantial gainful work, he is not disabled;
>
> (2) if the claimant is not performing substantial gainful work, his impairment(s) must be "severe" before he can be found disabled;
>
> (3) if the claimant is not performing substantial gainful work and has a "severe" impairment(s) that has lasted or is expected to last for a continuous period of at least 12 months, and if the impairment(s) meets or medically equals a listed impairment contained in Appendix 1, Subpart P, Regulation No. 4, the claimant is presumed disabled without further inquiry;
>
> (4) if the claimant's impairment(s) do not meet or medically equal a listed impairment, the next inquiry is whether the claimant's impairment(s) prevent him from doing his past relevant work, if not, he is disabled;
>
> (5) if the claimant's impairment(s) prevent him from performing his past relevant work, and other work exists in significant numbers in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors, he is not disabled.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) and 419.920(a)(4)(i)-(v) (2009).

The ALJ determined that Plaintiff last met the insured status requirements of the Act on December 31, 2006. (Tr. at 13). The ALJ further determined that (i) Plaintiff did not engage in substantial gainful activity between the alleged onset date of June 17, 2006, through his date last insured of December 31, 2006, (ii) the Plaintiff's impairments of major depressive disorder, posttraumatic stress disorder ("PTSD") and alcohol dependence, in questionable remission, were "severe" under 20 C.F.R. § 404.1520(c), but

5

Plaintiff's physical impairments therefore not severe as of December 31, 2006, (iii) the Plaintiff's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, (iv) the Plaintiff had the RFC to perform a full range of work at all exertional levels, with the mental capacity to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and the usual work situations; and deal with changes in a routine work setting, and (v) although Plaintiff was unable to perform his past relevant work, considering his age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.

**III. The ALJ's decision to deny Plaintiff benefits is supported by substantial evidence in the record and is in accordance with the applicable legal standards.**

The ALJ determined that Plaintiff did not have an impairment that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). In so doing, the ALJ assessed the severity of Plaintiff's mental impairments using the four criteria in 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.00.C, Paragraph B: activities of daily living, social functioning, concentration or pace and episodes of decompensation. (Tr. at 15). To satisfy the Paragraph B criteria, the impairment must result in marked restriction of two of the four categories.

The ALJ determined that Plaintiff had not experienced episodes of decompensation of an extended duration since the alleged onset

6

date, because he had not been psychiatrically hospitalized since 1991, and "his treatment records show that he has been generally symptomatically and functionally stable since his alleged onset date." (Tr. at 16). Since Plaintiff did not have marked difficulties in any category, the ALJ determined that Paragraph B criteria were not satisfied. Additionally, the ALJ determined that the evidence failed to establish sufficient Paragraph C criteria to find Plaintiff disabled.[2] 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.04, 12.06; SSR 96-8p.

The ALJ also determined that Plaintiff is able to understand, remember and carry out simple instructions; respond appropriately to supervision, co-workers, and the usual work situations; and deal with changes in a routine work setting. (Tr. at 17). This finding is supported by substantial evidence in the record.

Plaintiff saw James Kittleson, Psy.D., a psychologist at the VA medical center in Bath, NY on January 9, 2006. (Tr. 207-08). Dr. Kittleson noted that Plaintiff was dressed neatly and appropriately, and had good hygiene and grooming. Id. Plaintiff demonstrated good judgment, and his speech was well-organized with no disorganized thought processes, delusions, paranoia, or hallucinations. Dr. Kittleson diagnosed Plaintiff with post-traumatic stress disorder and major depressive disorder recurrent.

---

[2]The "Paragraph C" criteria describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity.

Plaintiff's global assessment of functioning ("GAF") was 55.[3] When Plaintiff saw Dr. Kittleson on February 13, he reported that his mood had improved with antidepressants. (Tr. 205-06). Plaintiff's reported GAF was 57 at the time.

Plaintiff saw Dr. Aurelian Niculescu at the VA medical center on April 26, 2006. (Tr. at 193-95). Plaintiff reported feeling "about the same" at this visit. Plaintiff reported that he continued to sporadically use alcohol and enjoyed spending time with his grandson and reading. Dr. Niculescu diagnosed Plaintiff with posttraumatic stress disorder, major depression, recurrent, and alcohol dependence in sustained partial remission. Plaintiff had a GAF of 65.

Plaintiff was examined by Annette Payne, Ph.D., a licensed psychologist, on May 30, 2006. (Tr. 168-72). Dr. Payne reported that Plaintiff was cooperative during the interview and displayed adequate social skills. Dr. Payne also reported that Plaintiff's affect and mood were anxious and depressed. (Tr. at 170). Dr. Payne diagnosed Plaintiff with major depression, moderate to severe, posttraumatic stress disorder, moderate, and alcohol dependence - 15 years sober. (Tr. at 171). Dr. Payne gave the opinion that Plaintiff could follow and understand simple directions and

---

[3]GAF is a psychological functioning rating. A rating from 51-60 indicates moderate symptoms (e.g., flat affect, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning. A rating of 61 to 70 indicates mild symptoms (e.g., depressed mood) or some difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-R) 34 (4th ed., text revision, 2000).

8

instructions, and perform simple tasks. She also opined that Plaintiff had attention and concentration problems, along with limitations in making regular schedules, learning new tasks and completing complex tasks, making appropriate decisions, relating to others, and dealing with stress.

In a Psychiatric Review Technique form dated June 2, 2006, the State Agency Review Physician, Dr. Richard Altmansberger, determined that Plaintiff had mild restrictions in activities of daily living, moderate difficulties with regard to concentration or pace, insufficient evidence regarding episodes of decompensation, and moderate difficulties in social functioning. (Tr. at 155).

On June 29, 2006, Plaintiff met with Dr. Kittleson at the VA medical center. (Tr. at 191-92). Plaintiff reported that he no longer needed to attend posttraumatic stress disorder group sessions. Id. Plaintiff met with Dr. Kittleson again on September 25, 2006 and reported the same mental status findings as the previous visit. (Tr. at 188-89). Plaintiff met with Dr. Kittleson again on November 15, 2006 and acknowledged his increased anxiety and poor sleep. (Tr. at 187-88).

On May 31, 2007, State agency review psychologist Dr. M. Morog evaluated the evidence in Plaintiff's medical records and gave an assessment of Plaintiff's mental RFC. (Tr. at 255-271). Although this evaluation was done after Plaintiff's date last insured, Dr. Morog opined that, overall, the evidence in the medical record suggested that Plaintiff could understand and follow simple directions, and sustain a routine and maintain adequate pace.

(Tr. at 271). Dr. Morog opined further that Plaintiff had some residual symptoms of posttraumatic stress disorder, but his overall response to citalopram and prazosin was good.

Plaintiff argues that the ALJ's psychiatric RFC was not supported by substantial evidence. This Court finds that there is substantial evidence in the medical record supporting the ALJ's determination that Plaintiff was able to understand, remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and the usual work situations; and deal with changes in a routine work setting, because many of the reports from Plaintiff's doctors suggest that Plaintiff's posttraumatic stress disorder and depression were not debilitating to the extent that would severely limit him from working in a low-stress environment. For example, Dr. Kittleson noted on January 9, 2006, that Plaintiff demonstrated good judgment, and his speech was well-organized with no disorganized thought processes. (Tr. at 207-08). Plaintiff reported to Dr. Kittleson that his mood had improved with antidepressants on February 13, 2006. (Tr. at 205-06). On June 29, 2006, Plaintiff told Dr. Kittleson that he no longer needed to attend posttraumatic stress disorder group sessions. (Tr. at 191-92). This suggests that his posttraumatic stress disorder evidence was under control. Dr. Payne reported that Plaintiff was cooperative during the interview with her on May 30, 2006, and displayed adequate social skills. (Tr. at 170). At this meeting, Dr. Payne opined that Plaintiff could follow and understand simple directions, and perform simple tasks. Finally, Dr. Morog opined

10

that Plaintiff could understand and follow simple directions, and could sustain a routine and maintain adequate pace. (Tr. at 271). Understanding simple directions, performing simple tasks and sustaining a routine are the qualities that the ALJ determined that Plaintiff would be able to do as part of his RFC. I conclude that the evidence in the medical record is substantial and supports the ALJ's determination.

A. *The psychiatric medical record was adequately developed after the Appeals Council denied Plaintiff's request for review.*

When a claimant is proceeding *pro se*, the ALJ has a heightened duty to ensure that "all of the relevant facts are sufficiently developed and considered" with regards to the claimant's record. Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990). While substantial evidence supports Plaintiff's psychiatric RFC, the ALJ should have clarified some of the psychiatric medical evidence by contacting Plaintiff's physicians, to ensure that all of the relevant facts were sufficiently developed and considered.

The Department of Veterans Affairs determined that Plaintiff's level of disability increased from 50% to 70% effective March 12, 2007, due to post-traumatic stress disorder with alcohol abuse. (Tr. at 284-87). Following this increase, Plaintiff requested the opinions of Dr. Niculescu and Dr. Kittleson in the form of mental questionnaires regarding the VA evaluation. Dr. Niculescu wrote on March 17, 2010, that Plaintiff had the "above-mentioned severity of his condition before 12/31/06." (Tr. at 282). Dr. Kittleson wrote on March 30, 2010, that Plaintiff "was engaged in treatment prior

11

to 12/31/06" and that his "disability has been a chronic condition." (Tr. at 279). Since Plaintiff received these opinions after the date of the hearing on December 14, 2009, the ALJ did not have access to these opinions when he made his decision.

Generally, when an ALJ fails adequately to develop the record, a district court may remand for further proceedings. See Rosa v. Callahan, 168 F.3d 72, 79-81 (2d Cir. 1999). However, remand is unnecessary in this case, because Plaintiff later submitted the above-mentioned medical questionnaires from Dr. Niculescu and Dr. Kittleson to the Appeals Council which accepted the evidence as part of the record. (Tr. at 5). Therefore, when the Commissioner's decision became final upon denial of review by the Appeals Council, the record was adequately developed. See 20 C.F.R. § 404.970(b) (providing that where new and material evidence is submitted to the Appeals Council, the entire record is evaluated; see also Lamorey v. Barnhart, 158 Fed.App'x 361, 363 (2d Cir. 2006)).

B. *Substantial evidence in the record supports the ALJ's decision that Plaintiff did not have a severe physical impairment.*

The ALJ determined that there was a lack of objective medical evidence that would support finding that Plaintiff had any severe physical limitations prior to the date last insured.

Plaintiff met with Dr. Lombardi on October 7, 2004 and did not report any leg pain, but noted a left knee injury from his combat experience. (Tr. At 234-38). At this meeting, Plaintiff reported several details regarding headaches. Plaintiff later met with Dr. Lombardi on February 25, 2005, September 16, 2005, and

12

February 17, 2006, and did not report any leg pain at any of these visits. (Tr. at 223-25, 210-212, 201-05).

In May 2006, Plaintiff was examined by Dr. Wahl of Industrial Medicine Associates. (Tr. at 162). Dr. Wahl reported that Plaintiff could perform a full squat without any difficulty. (Tr. at 163). Plaintiff needed no assistance in changing for the physical exam or getting on and off the exam table. Plaintiff demonstrated a full range of motion in his hips, knees, and ankles bilaterally. (Tr. at 164). Plaintiff also demonstrated a full 5/5 register of strength in his upper and lower extremities. Dr. Wahl was unable to find any subluxations, contractures, ankylosis, or thickening, and no redness, heat, swelling, or effusion. Dr. Wahl took an x-ray of Plaintiff's right hip and noted it to be "unremarkable." (Tr. at 165). Dr. Wahl noted that Plaintiff "should avoid prolonged stranding and squatting activities when his joint pain flares."

Plaintiff met with Dr. Lombardi again on November 22, 2006 and observed that Plaintiff walked normally and had full muscle strength in all four of his extremities. (Tr. at 183-86). Plaintiff did not complain of leg pain at this examination. Id.

Plaintiff again visited Dr. Lombardi on June 15, 2007 and received a series of x-rays from the Bath VA medical center. (Tr. at 274-77). Plaintiff complained of chronic pain in both legs which had been going on for eight to ten years. Dr. Lombardi noted that, at a previous physical examination in November 2006,

Plaintiff did not mention this problem. Although the x-ray was performed over five months after Plaintiff's date last insured, there were indications of degenerative disc changes in Plaintiff's lumbar spine and osteophyte formation that may have preceded December 31, 2006. (Tr. at 264-75).

Plaintiff argues that the Commissioner "has commanded that the ALJ call upon the service of a medical advisor" when the issue in the case is whether an impairment existed before the date last insured. Pl's Mem. of Law at 6, citing SSR 83-20. "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." SSR 83-20. SSR 83-20 further provides that if "reasonable inferences about the progression of the impairment cannot be made on the basis of the evidence in file and additional relevant medical evidence is not available, it may be necessary to explore other sources of documentation." SSR 83-20. As detailed above, the ALJ determined that he could make reasonable inferences about the progression of Plaintiff's physical impairment based on the medical evidence already contained in the file.

Substantial evidence in the record supports the ALJ's decision that Plaintiff's leg pain, prior to December 31, 2006, was not a severe impairment. First, between October 2004 and November 2006, Plaintiff met with Dr. Lombardi five times, and did not report leg pain at any of the meetings. Plaintiff did not report leg pain to

his doctor until the date of his x-ray, which was taken on June 15, 2007. (Tr. at 274-77). During the x-ray appointment, Plaintiff claimed that he had experienced leg pain for several years. However, Plaintiff did not report leg pain to his physicians. Furthermore, Plaintiff's x-ray of his right hip from May 2006 was considered to be "unremarkable." (Tr. at 165). This x-ray was taken from the same time period preceding Plaintiff's date last insured. The fact that the x-ray of his right hip was "unremarkable" and that Plaintiff had not complained of pain supports a conclusion that Plaintiff's leg pain was not very debilitating at that point. This Court therefore finds that the ALJ based his decision that Plaintiff did not have a severe physical impairment on substantial medical evidence.

C. *The Appeals Council properly considered the evidence submitted to it by the Plaintiff.*

Plaintiff argues that the Appeals Council did not properly consider the evidence submitted to it after the hearing with the ALJ. See Pl's Mem. of Law at 11. If a claimant submits new material to the Appeals Council, the Appeals Council shall consider the evidence that relates to the period before the ALJ decision. 20 C.F.R. § 970(b). Furthermore, the Appeals Council must evaluate the entire record, including the new evidence, as it relates to the period in question. Id. Finally, the Appeals Council is required to review the case and determine if the ALJ's decision is contrary to the weight of the evidence in the record. Id. The record shows that

the Appeals Council considered the additional evidence that Plaintiff submitted (including the questionnaires from Dr. Kittleson and Dr. Niculescu, and the VA evaluation as discussed above), and determined that it did not provide a basis for changing the ALJ's decision. (Tr. at 1-2).

Plaintiff argues specifically that the Appeals Council did not properly consider the evidence submitted to it because the ALJ erroneously reported that the Department of Veterans Affairs increased Plaintiff's level of disability from 30% to 70%. (Tr. at 21). However, the record demonstrates that Plaintiff's level of disability increased from 50% to 70%. (Tr. at 284). If the new evidence demonstrates that the ALJ's determination "is no longer a reasonable interpretation of the medical evidence," then the matter should be remanded or reversed. Brown v. Apfel, 174 F.3d 59, 65 (2d Cir. 1999). Regardless of the error made here, the record contains substantial evidence to support the Appeal Council's decision that the ALJ correctly determined that Plaintiff's physical impairments were not severe. Accordingly, this Court determines that the Appeals Council properly considered the additional evidence submitted to it.

D. *The ALJ properly determined that jobs existed in the national economy that Plaintiff could have performed.*

When determining whether a claimant can make a successful adjustment to other work, the ALJ must determine whether a claimant

is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g).

The ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. at 21). On the date last insured, Plaintiff was 57 years old, which is defined as an individual of advanced age. 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and is able to communicate in English. The ALJ determined that Plaintiff's ability to perform work at all exertional levels has been compromised by nonexertional limitations. (Tr. at 22). The ALJ determined that Plaintiff remains capable of performing the basic mental demands of competitive remunerative unskilled work. Where a claimant's only severe impairments are mental and prevent the person from meeting the mental demands of past relevant work, then the final consideration becomes whether the person can be expected to perform unskilled work. SSR 85-15. The basic demands of competitive remunerative unskilled work include the abilities to understand, remember and carry out simple instructions, respond appropriately to supervision, co-workers, and the usual work situations and deal with changes in a routine work setting. SSR 96-9p. The evidence in the record supports the conclusion that Plaintiff is capable of performing the basic mental demands of competitive remunerative work. The ability to perform the full range of work at all exertional levels, with the mental capacity to understand,


remember, and carry out simple instructions; respond appropriately to supervision, co-workers, and the usual work situations; and deal with changes in a routine work setting, represents substantial work capability for jobs in the national economy at all skill and physical demand levels. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 204.00. The ALJ concluded that, through the date last insured, considering Plaintiff's age, education, work experience, Plaintiff had the RFC to perform jobs that existed in significant numbers in the national economy. See 20 C.F.R. § 404.1569 and 404.1569(a).

## Conclusion

For the reasons set forth herein, this Court finds that the Commissioner's decision to deny Plaintiff DIB was supported by substantial evidence in the record. Therefore, I grant Commissioner's motion for judgment on the pleadings. The Plaintiff's complaint is dismissed with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

                                    s/Michael A. Telesca
                                    MICHAEL A. TELESCA
                                    United States District Judge

DATED: July 25, 2011
       Rochester, New York